Date signed July 24, 2015



ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| Dreamplay, Inc. t/a The Oasis | * | Case No. 12-23120-RAG |
| | | Chapter 7 |
| Debtor | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION IN SUPPORT OF ORDER
## SUSTAINING ORDER TO SHOW CAUSE AND GRANTING IN PART
## AND DENYING IN PART JAMES P. KOCH'S APPLICATION FOR
## COMPENSATION AND DENYING JOHN DELUCA'S MOTION
## <u>FOR ALLOWANCE OF ADMINISTRATIVE FEES</u>

## I.    <u>Preliminary Statement</u>

This Memorandum Opinion (Opinion) addresses issues raised in three separate papers

that arise from an intertwined series of events.  The paper filed first in time is John J. DeLuca's

Motion for Allowance of Administrative Fees (Substantial Contribution Motion) (Dkt. No. 106)

filed on April 08, 2013.  Mr. DeLuca, a professional accountant and creditor of the Estate,

became the aggressive adversary of the Debtor (and individuals associated with the Debtor)

before this case was filed.  He seeks approval of fees (and coveted administrative status for

them) on the premise that the work he did post-petition to help topple the Debtor's existing

management made a "substantial contribution" to the case.  The next document is James P.

Koch's Application for Compensation (Fee Application) (Dkt. No. 120) filed on April 30, 2013.

Mr. Koch was authorized to serve as the Debtor's post-petition counsel and did so until the

appointment of the Chapter 11 Trustee, Joseph Bellinger, Esquire, effectively ended his tenure.[1]

The Fee Application sets forth his request for the approval of his fees and that they be allowed as

an administrative expense.  The final document is the Court's own Order that John P. Raynor,

Esq., Show Cause Why He Should not be Held in Contempt (Contempt Order) (Dkt. No. 152)

entered on July 24, 2013.  Mr. Raynor, an attorney apparently admitted to practice in Nebraska

(but not in Maryland or before this Court) represented Mr. DeLuca as a "ghost" attorney without

either *pro hac vice* status or a Maryland law license.

On May 1, 2013, the Trustee filed an objection to the Substantial Contribution Motion

(Trustee's First Objection) (Dkt. No. 122).  On May 17, 2013, Mr. DeLuca (with Mr. Raynor's

assistance) filed an objection to the Fee Application (DeLuca Objection) (Dkt. No. 130).  On

May 20, 2013, the Trustee also filed an objection to the Fee Application (Trustee's Second

Objection) (Dkt. No. 132).  Mr. Raynor responded in writing to the Contempt Order (Raynor's

Response) on August 23, 2013 (Dkt. No. 160) but declined to appear at the hearing on the same.

The issues have been fully briefed and a hearing was held on September 3, 2013.  The

question presented by the Substantial Contribution Motion is whether Mr. DeLuca's efforts

resulted in a substantial contribution to the Estate sufficient to justify administrative status.  The

Court concludes that the answer is "no."  The question presented by the Fee Application is

whether any part of Mr. Koch's fee should be allowed as an administrative expense

notwithstanding his somewhat fumbling case management.  The Court concludes that a portion

---

[1] Mr. Koch's order of employment was entered on October 11, 2012 (Dkt. No. 31).  The order that required the appointment of a Chapter 11 trustee was entered on March 3, 2013 (Dkt. No. 94).

of Mr. Koch's requested fees should be allowed.  Finally, the question presented by the

Contempt Order is whether Mr. Raynor should be held in contempt and, if so, what are the

appropriate sanctions.  The Court concludes that Mr. Raynor must be held in contempt and the

specific sanctions imposed will be identified in Section III(b) of this Opinion.

## II.    Background

This case began as a Chapter 11 on July 16, 2012 when the Debtor, Dreamplay, Inc., filed

its Voluntary Petition for Relief (Petition).[2]  Debtor operated a so-called adult entertainment club

under the trade name "The Oasis" that did business at 417 E. Baltimore Street.  The club is in the

heart of Baltimore's open and notorious "Block," a tiny haven for always edgy and often illicit

activity.  Debtor's Statement of Financial Affairs (SOFA) and Schedules were filed on July 30,

2012 and signed under penalty of perjury by Wendell Woodard, the Debtor's ninety *per cent*

(90%) owner and President.  Per Mr. Woodward's representation on Schedule B, the Debtor's

most valuable assets were its liquor and adult entertainment licenses, assigned a combined value

of $75,000.

According to the answer to question 4 of the SOFA, five separate civil actions were

pending against the Debtor within the year preceding its bankruptcy.  Of those, a Mr. James

Mason prosecuted one collection action and Mr. DeLuca prosecuted another.  Mr. Mason was

listed by the Debtor on both its original (Dkt. No. 15) and amended (Dkt. No. 25) Schedule F as

an unsecured creditor with a claim of $140,000 arising from a "Promissory Note/Business

Loan."  Mr. DeLuca, with a claim of $12,983, was likewise listed on both versions of Schedule

---

[2] On July 23, 2012, an Order to Show Cause as to Dismissal (Dkt. No. 10) was entered that required the Debtor
(self-identified as a "small business" under 11 U.S.C. § 101(51D)) to file financial records that should have been
filed with the Petition. See 11 U.S.C. § 1116(1). In response, the Debtor submitted its tax return for the 12 months
ending on June 30, 2012 but also asserted that it did not have a "balance sheet, statement of operations, or cash flow
statement" because none had been prepared (Dkt. No. 16).  Debtor's admission of less than adequate record-keeping
foreshadowed events to come.

F.  Because neither claim was listed as disputed, contingent or unliquidated, and the case was filed under Chapter 11, neither creditor needed to file a proof of claim to be treated as an allowed unsecured claimant.  Rule 3003(b)(1).[3]  However, Mr. Mason was not an unsecured creditor as the Debtor's liquor license was actually collateral for his claim.  He filed a secured proof of claim in the amount of $159,833.23 on August 27, 2013.  Mr. DeLuca, on the other hand, never filed a proof of claim.[4]

The Debtor did not include Mr. DeLuca on its creditor matrix and it is unclear from the record how Mr. DeLuca learned of this case.  Nevertheless, he did learn of it early enough to attend the Debtor's Section 341 meeting of creditors.  As Mr. DeLuca later acknowledged, he decided (in part on the basis of an interpretation of information obtained at that meeting) that, regardless of the inclusion of the liquor license on the Debtor's Schedule B as personal property of the estate, the license was not "owned" by the Debtor and was therefore fair game as an attachable asset.  Mr. DeLuca allegedly reached this conclusion in part because the license was issued in the name of two individuals: Barry Richardson and his son, Barry Richardson, Jr.[5]  The Debtor described what Mr. DeLuca and his collection attorney, Gregory M. Kline, Esquire, did next in its Expedited Motion for Sanctions for Continuing Violations of Automatic Stay (Sanctions Motion) (Dkt. No. 45):

---

[3] Unless otherwise noted, all rule citations are to the Federal Rules of Bankruptcy Procedure (Rules) and all statutory citations are to the Bankruptcy Code (Code), found at Title 11 of the United States Code.

[4] Mr. DeLuca was also listed in response to question 19(b) of the SOFA as an individual who had either audited the Debtor's books and records or prepared a financial statement for the Debtor within two years prior to the filing of the case.  Once the dispute between the Debtor and Mr. DeLuca became heated, the Debtor objected to Mr. DeLuca's claim, notwithstanding the fact that the only evidence in the record of Mr. DeLuca's claim was the Debtor's statements under oath that affirmed its existence (Dkt. No. 52).

[5] All liquor licenses in Maryland are issued in individual names. MD. CODE ANN., ART. 2B § 9-101.  The legislature has deemed that to be the best way to keep a watchful eye over their use. See *Rosedale Plaza Ltd. P'ship v. Lefta, Inc.*, 140 Md. App. 243, 249-53, 780 A.2d 387, 391-93 (2001).  Nevertheless, it was the corporate Debtor that was granted the express privilege of keeping and selling liquor on its premises pursuant to the license.

On 12/13/12, DeLuca obtained a default judgment in the amount of $12,982.50 against Barry Richardson, Sr. for money allegedly due and owing, in the District Court of Maryland for Baltimore City, Case No. 010100175792012. In furtherance of his efforts to enforce the judgment, DeLuca, acting through Kline, filed a request for writ of execution on 12/27/12. The property to be levied is described in the Request as a liquor license (#LBD 476) located at 417 E. Baltimore St, Baltimore, MD 21213, which is the address of the Debtor's bar and nightclub business. The Request further directed the Sheriff to remove the License from the premises. On or about 1/15/13, a writ of execution was issued. The Sheriff thereupon levied on the License and removed it from the Debtor's business premises.[6]

By the Motion for Sanctions, the Debtor sought actual and punitive damages caused by Mr. DeLuca and Mr. Kline's violation of the automatic stay and seizure of the License.[7] Fighting back, Mr. Kline filed Non-Party, Gregory M. Kline, Esq.'s, Response in Opposition to Debtor's Expedited Motion for Sanctions for Continuing Violations of Automatic Stay (Kline Response) (Dkt. No. 53) on February 14, 2013. In attempting to explain why the seizure of the License did not violate the automatic stay and why no sanctions should be entered, the Kline Response primarily relied upon, (a) a case, *Dodds v. Shamer*, 339 Md. 540, 663 A.2d 1318 (1995), that acknowledged that a liquor license is property that may be executed upon but did not discuss the impact of the automatic stay, (b) the assertion that "DeLuca also consulted with separate counsel with bankruptcy experience regarding the applicability of the automatic stay and other matters and, based on that advice, directed the undersigned not to dismiss the writ of execution," and (c) Mr. DeLuca's Affidavit. In his Affidavit, Mr. DeLuca stated that:

---

[6] Immediately after the Sanctions Motion was filed, on February 11, 2013, Mr. DeLuca filed his Movant's Motion to Dismiss the Case or Alternatively, Appoint a Trustee (Motion to Dismiss) (Dkt. No. 47) and asked for an expedited hearing (Dkt. No. 48). The US Trustee filed a "response" to the Motion to Dismiss that succinctly focused on the Debtor's dismal financial reporting and supported Mr. DeLuca's request for remedial action (Dkt. No. 51). The Debtor then filed an objection to Mr. DeLuca's claim, now alleging that despite the Debtor's listing of his claim on Schedule F, he was not a legitimate creditor (Dkt. No. 52).

[7] Curiously, the Motion for Sanctions did not request the return of the License, which should have been its primary objective.

> I confirmed with the Baltimore City Liquor Board that the liquor
> license in question was issued not to Dreamplay but to the
> Judgment Debtors individually.  Upon information and belief, Mr.
> Kline also spoke with the Baltimore City Liquor Board and
> received the same information.
>
> \*       \*       \*
>
> I consulted with separate counsel with bankruptcy experience,
> along with Mr. Kline, regarding the applicability of the automatic
> stay and other matters and, based on their advice, directed Mr.
> Kline not to dismiss the writ of execution . . . ."

The fatal flaw in the respondents' position was the fact that the liquor license was
property of the estate.  This holding is embodied in *Rosedale Plaza v. Lefta,* 140 Md. App. 243,
780 A.2d 387 (Md. App. 2001), a case precisely on point, yet cited by neither side.  *Rosedale
Plaza* also involved a contest over competing interests in a liquor license – those of judgment
creditors against the named individual licensees versus those of the bankruptcy trustee for the
insolvent corporate liquor store owner that used the license.  The simple question was: who
owned the license under Maryland law?  The Court held:

> [T]he Circuit Court . . . did not err in holding that the liquor license
> was owned by Lefta, Inc. and therefore not subject to levy by a
> judgment creditor of the individual licensees.  The license was
> issued to the licensees in their capacities as officers and
> stockholders of Lefta, Inc.  Thus, the liquor license in this case was
> owned by Lefta, Inc., and the licensees obtained no individual
> ownership interest in the liquor license.
>
> \*       \*       \*
>
> The only logical interpretation of [MD. CODE ANN., ART. 2B] § 9-
> 101 is that liquor licenses issued to individuals for the use of a
> corporation are owned by the corporation.  Such a construction
> provides certainty and security in the relationship between the
> licensees and the corporation and protects the investment of a
> corporation in a business that involves the sale of alcoholic
> beverages.

*Id.* at 249-50, 252, 780 A.2d 387, 391, 393 (2001).

That analysis fairly annihilated the position of Messrs. DeLuca and Kline, not to mention that of Mr. DeLuca's "separate lawyer with bankruptcy experience" who then stood with one foot in the shadows but turned out to be Mr. Raynor.  A preliminary hearing on the Motion for Sanctions was held on February 15, 2013.  The Court observed that the holding of *Rosedale Plaza* seemed to make the outcome a *fait accompli*.  Nevertheless, Mr. DeLuca stressed the pre-seizure "due diligence" he had engaged in which included making use of "things he had heard" and talking to a lawyer who advised him as to bankruptcy law.[8]  The Oversigned refrained from ruling at that time in order to address the question of damages at a later date and in order to combine the hearing with the Motion to Dismiss.  In the hearing's wake, Mr. Kline filed a supplement that (a) indicated the liquor license had been returned to the Debtor and (b) contested the Debtor's damage claim (Dkt. No. 81).  An evidentiary hearing on the Motion for Sanctions, Motion to Dismiss and the Debtor's objection to Mr. DeLuca's claim was held on March 13, 2013.  By then, Mr. Mason had also formally taken a position in favor of the appointment of a Chapter 11 trustee (Dkt. No. 84).  The hearing was continued until March 29th to permit any additional filings and for the Court to review the evidence.  Supplemental papers were filed, including the Debtor's "consent" to dismissal (Dkt. No. 93), and following argument, the Oversigned gave an oral ruling on all outstanding matters.  The Court concluded that a trustee should be appointed and Mr. DeLuca and Mr. Kline should be held in contempt for their violation of the automatic stay.[9]  On April 2, 2013 the Court entered an Order Granting Debtor's Expedited Motion for Sanctions for Continuing Violations of Automatic Stay (Sanctions Order)

---

[8] Mr. DeLuca did not identify Mr. Raynor by name at the hearing.

[9] The decision to appoint a Chapter 11 trustee was easy.  Under Mr. Woodard's mismanagement, the Debtor had failed to account for several thousand dollars in cash receipts each month and offered little hope this state of affairs could change.  The gaps in accountability were made plain on the face of the Debtor's Monthly Operating Reports (MORs).

(Dkt. No. 97). The Order fined both Mr. DeLuca and Mr. Kline $2,085 in attorney's fees and assessed them each $5,000 in punitive sanctions.[10]

On April 15, 2013, Mr. DeLuca filed at Docket Nos. 110, 111 and 112: (a) John J. DeLuca's Motion for Reconsideration of the April 2, 2013 Order Granting Debtor's Expedited Motion for Sanctions for Continuing Violations of Automatic Stay (Motion for Reconsideration), (b) John J. DeLuca's Motion for Expedited Consideration of the Motion for Stay of the Court's Order of April 2, 2013 Providing for Compensatory and Punitive Sanctions and (c) a Motion for Stay of the Court's Order of April 2, 2013 Providing for Compensatory and Punitive Sanctions. As with the prior papers filed by Mr. DeLuca, these began with the language, "COMES NOW, John J. DeLuca, *pro se*, a creditor . . . ." However, the stylistic quality of these papers appeared to be more than a cut above that of the prior papers filed by Mr. DeLuca. Orders denying each motion were entered on April 17, 2013. But in part because of the uptick in quality, the Court added the following statement in the margin of the Order denying the Motion for Reconsideration (Order Denying Reconsideration):

> [The Motion for Reconsideration] of the [Sanctions Order] shall be denied for the reasons originally explained on the record at the March 29, 2013 hearing. State law defining rights and interests in property is binding upon this Court and, under these facts, any lapse in research committed by Debtor's counsel is irrelevant to the Movant's acts in violation of the automatic stay. The Court notes that the [Motion for Reconsideration] appears to have been drafted with the guidance of legal counsel, or entirely ghostwritten, although no attorney assistance is disclosed. If so, then such conduct is a misrepresentation to the Court, concealing the true author of a pleading. *In re Mungo*, 305 B.R. 762, 768-69 (Bankr. D. S.C. 2003). In addition, it allows an unrepresented litigant to obtain the benefit both of legal counsel and of the latitude generally granted such litigants by courts interpreting their pleadings. For this reason it has been deemed impermissible. If the Court suspects that ghostwriting has occurred in the future,

---

[10] All of these sums have been paid.

               then appropriate action, including an evidentiary hearing to
               investigate, shall be taken.

(Dkt. No. 113).

On April 30, 2013, Mr. Raynor filed a Complaint for Judicial Misconduct or Disability (Misconduct Complaint) with the Judicial Council of the Fourth Circuit against the Oversigned (Case No. 04-13-90040).  In the Misconduct Complaint, Mr. Raynor identified himself as a resident of Omaha, Nebraska and also indicated, "Note: I represent John J. DeLuca, a creditor, under a limited representation agreement where I am providing pro bono legal service."  Mr. Raynor then attempted to reargue the Sanctions Order and moreover suggested that the Oversigned was improperly seeking to deprive Mr. DeLuca of Mr. Raynor's "limited" representation and therefore requested a prophylactic order that would bar the Oversigned from holding the threatened evidentiary hearing on ghostwriting noted in the margin of the Order Denying Reconsideration.  The Misconduct Complaint was dismissed by Memorandum and Order (Dismissal Order) entered on June 3, 2013.  In part, the Dismissal Order stated,

               Although Complainant was identified on the documents as having
               assisted in preparation of the pleadings, the concerns recited in the
               Mungo case . . . nevertheless pertain.  Pleadings prepared by
               counsel are held to a different standard than pro se pleadings, and
               the judge could properly seek to ascertain whether pro se filings
               were, in actuality, being prepared by counsel.

Memorandum and Order, No. 04-13-90040 (June 3, 2013).

After reading the Misconduct Complaint, the Oversigned re-reviewed the Docket and realized that Mr. DeLuca had referenced Mr. Raynor's ongoing assistance in footnotes appended to Mr. DeLuca's signature block (where additional, boldface misrepresentations as to Mr. DeLuca's "pro se" status were also included) in each paper he had filed since the case began.  As stated in the Order to Show Cause:

> Admittedly, this Court – albeit under the impression that Mr. DeLuca was proceeding pro se as he represented – erred in failing to notice the multiple footnotes until after the Misconduct Complaint was filed.  Nevertheless, had the footnote in [Mr. DeLuca's] Motion to Dismiss been noticed upon the first reading, an order to show cause would have been immediately entered to Mr. Raynor for the reasons explained in this Order.

(Dkt. No. 152).

As indicated earlier, a hearing on the Order to Show Cause was held on September 3, 2013.  Mr. Raynor filed his Response (Dkt. No. 160) but did not deign to appear.  The Substantial Contribution Motion and Fee Application were both filed before the Order to Show Cause was entered.  The Court will now resolve each in turn.

## III.   <u>Jurisdiction and Venue</u>

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334, 157(b)(2)(A) (B) and (O) and Local Rule 402 of the United States District Court for the District of Maryland.  Venue is likewise proper under 28 U.S.C. §1409(a).  The Court concludes that this is a Core proceeding and that the entry of this Opinion and the accompanying Order do not offend the principles enunciated in *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

## IV.   <u>Analysis</u>

   a.   *The Substantial Contribution Motion Does Not Warrant Approval Either Under Existing Law or the Equities of this Case.*

Sections 503(b)(3)(D) and 503(b)(4) provide the statutory basis for a creditor who seeks payment from the estate, and priority, administrative claim status, based upon the creditor's "substantial contribution" to the case.  Those sections provide as follows:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> *        *        *

10

> (3) . . . (D) a creditor . . . , in making a substantial contribution in a case under chapter 9 or 11 of this title;
>
>         *       *       *
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based upon the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant . . . .

11 U.S.C. §§ 503(b)(3)(D), (b)(4) (2012).

As with Mr. DeLuca's other papers, the Substantial Contribution Motion also includes a footnote that indicates it was "prepared with the assistance of John P. Raynor, Esq." (Dkt. No. 106 at 8 n.2). For the reasons explained in Section III(b), all papers that include that footnote will be stricken from the Docket and vacated by the Order accompanying this Opinion and enforcing the rulings expressed herein. It was entirely inappropriate for Mr. Raynor to practice law on behalf of Mr. DeLuca without either a Maryland license or approved *pro hac vice* status. Likewise, it was inappropriate for Mr. DeLuca to falsely represent in his papers that he was proceeding "pro se" when he was not. Papers filed under these circumstances shall not remain on the Docket.

Nevertheless, to insure the record is complete, the Court will rule on the substance of the Substantial Contribution Motion. The Substantial Contribution Motion seeks a total award of $17,941.90 and that the award be granted administrative priority status in light of the work performed to draft and prosecute the Motion to Dismiss. The total amount claimed includes $13,220.20 as "time billed" by Mr. DeLuca at his "standard hourly rate" and attendant expenses incurred for his work as a "forensic" accountant. The remaining $4,619.70 consists of billing incurred in defense of the Debtor's objection to Mr. DeLuca's prepetition unsecured claim. Mr.

DeLuca characterizes the objection as frivolous and filed "in retaliation" for the Motion to Dismiss.[11]

Notwithstanding Mr. DeLuca's alleged accounting skills, the Motion to Dismiss was largely grounded upon information easily gleaned from the Debtor's MORs and the knowledge of the Debtor's financial affairs that Mr. DeLuca gained from preparing the Debtor's financial statements before the case was filed.  The Motion to Dismiss specifically alleged that:

   a.   There were unaccounted for gaps of five figures between the Debtor's monthly reported income and the Debtor's monthly bank deposits;

   b.   The Debtor should have had paper balance sheets (prepared by Mr. DeLuca) in its possession contrary to the Debtor's statement under oath that none existed; and

   c.   The Debtor's fiscal year was different from that posited in the Debtor's corporate resolution filed in the case.

The Motion to Dismiss then set forth a lengthy recitation regarding Section 1112(b) (which governs dismissal or conversion of Chapter 11 cases) that included select case law. Although the U.S. Trustee and Mr. Mason both lined up with Mr. DeLuca in favor of ousting the Debtor from power and the appointment of a trustee, Mr. DeLuca's Motion to Dismiss was the first paper that raised that issue.  Relying upon the result accomplished – the appointment of a trustee – the Substantial Contribution Motion lists the following "assets" as having also been realized by the Estate due to Mr. DeLuca's efforts:

   a.   The Debtor's admission in Amended MORs to a $10,080.76 increase of general cash on hand for the period of December 2012 and of an additional $15,000 held in a safe;

   b.   The Debtor's disclosure of "unauthorized" payments to management of $14,000 that, by Messrs. DeLuca and

---

[11] The Court agrees with that description.

    Raynor's reckoning, should be "avoidable and recoverable;"

  c.  The Debtor's disclosure of "license fees" of $4,100 that should be recoverable; and

  d.  The potential recovery of approximately $10,000 in unwarranted professional fees.

(Dkt. No. 106 at 7).

  There has been no activity in this case since the entry of the May 10, 2015 order authorizing the employment of an auctioneer (Dkt. No. 236). So far, the net proceeds recovered for the benefit of the Estate (as reflected on the Docket) consist of $333 from the sale of marketable personal property of the Debtor and $4,000 as an administrative surcharge against the proceeds of the sale of the Debtor's liquor license to 417 E. Baltimore Street, LLC. Mr. Mason, the creditor whose debt was secured by the license, received the vast lion's share of the $86,500 purchase price. The Court does not know how much cash, if any, was either turned over to the Trustee or recovered from his brief operation of the business. But the Trustee has not filed any recovery actions and, notwithstanding Messrs. DeLuca and Raynor's prediction, no other potential, valuable assets appear to exist.[12] And there are certainly no valuable assets that have come into existence and which were created by their "substantial contribution". The Trustee's First Objection opposed the Substantial Contribution Motion and asserted that, (1) the mere prosecution of a contested matter does not add up to a substantial contribution and (2) the value of Mr. DeLuca's efforts fell well short of the $17,941.90 sought.

  In the Substantial Contribution Motion, Messrs. DeLuca and Raynor rely upon *In the Matter of DP Partners Ltd. Partnership*, 106 F. 3d 667 (5th Cir. 1997), *In re Celotex Corp.,* 227

---

[12] The Trustee should still have the proceeds of the contempt payments made by Mr. DeLuca and Mr. Kline. However, to award Mr. DeLuca a share of that money would be little more than a perverse joke. In any event, the value of any other available cash (or, for that matter, recoverable assets) that existed before the appointment of a Trustee cannot be attributed to Mr. DeLuca's efforts. He would not have done anything appreciable to *create* the value if it was already in existence.

F. 3d 1336 (11th Cir. 2000), *In re Cellular 101, Inc*., 377 F. 3d 1092 (9th Cir. 2004) and *In re On Tour, LLC*, 276 B.R. 407 (Bankr. D. Md. 2002). However, distinguishing those cases from this one is a simple exercise. In each, the creditor (or professionals employed by the creditor) made significant, unique contributions to the case that led directly to substantial, measurable value, redounding to the direct benefit of all creditors. In *DP Partners* for example, the creditor gave itself standing by purchasing unsecured claims and then initiated a bidding war that increased the estate's value by $3 million. *DP Partners*, 106 F.3d at 672-73 (5th Cir. 1997). In *Celotex*, a mass tort case, the creditor "provided extraordinary service" for "several years" to help the parties "develop a nearly consensual, confirmable plan . . . ." *Celotex*, 227 F.3d 1336, 1339-40 (11th Cir. 2000). Likewise, in *Cellular 101*, the substantial contribution claimants "presented the only reorganization plan" and that plan paid creditors 100% of their claims. *Cellular 101*, 377 F.3d 1092, 1096-97 (9th Cir. 2004). Finally, in *On Tour* the creditors stepped in to fill the administrative limbo that existed due to the Debtor's virtual non-participation and then prevailed in a hotly contested hearing to appoint a trustee without support or assistance from other parties-in-interest. *On Tour*, 276 B.R. 407, 418, 420 (Bankr. D. Md. 2002).

Mr. DeLuca's contribution was neither substantial nor unique. The Court appointed a Trustee mainly because of the Debtor's failure to account for significant sums of cash that appeared to be bleeding out to parts, or persons, unknown. The Debtor could not (or would not) adjust its business practices to fix that problem. Mr. DeLuca merely pointed out the obvious and Mr. Raynor laced it with boilerplate verbiage. Moreover, Mr. DeLuca's efforts have not resulted in any appreciable creation or enhancement of value whatsoever for creditors even after the passage of two years. The largest asset by far that the Court is aware of is the proceeds of the

contempt sanctions paid by Mr. DeLuca and Mr. Kline. Under these circumstances, there is no basis for a substantial contribution award. [13]

Finally, and perhaps more importantly, the equities of this case are decidedly against Mr. DeLuca. Armed with Mr. Raynor's incompetent advice regarding the definition of property of the estate and the scope of the automatic stay, he chose to seize the liquor license in order to either put the Debtor out of business or extort payment of his prepetition debt. Whether the liquor license was owned by the Debtor or its shareholders, Mr. DeLuca's (and Mr. Raynor's) intent behind the license seizure was to cripple the Debtor's ability to do business and therefore reorganize. If the automatic stay bars anything, it certainly bars that kind of outrageous tactic. Illegally strong-arming the Debtor is not going to earn favor in this Court. If somehow Mr. DeLuca was entitled to a substantial contribution award on these facts it would be equitably subordinated to the lowest level of priority on the basis of his gross misconduct. The Substantial Contribution Motion will therefore be denied.

b.    *Mr. Koch Shall be Awarded $7,250 in Fees and $1,046 in Expenses of the total $15,680 Plus Expenses Sought in the Fee Application*

The Fee Application seeks a total of $15,680 in fees and $1,046 in expenses. [14] When the Fee Application was filed, Mr. Koch held a retainer of $7,250, (Dkt. No. 120 at 9), or $250 less than the agreed upon retainer identified in his Disclosure of Compensation (Dkt. No. 2). The Trustee's Second Objection sought to insure only that no additional money was paid to Mr. Koch over and above the retainer already in escrow. The Trustee acknowledged that the Estate had gained at least some minimal value as a result of Mr. Koch's services but he also asserted that

---

[13] Any time and effort invested by Messrs. DeLuca and Raynor in preparing Mr. DeLuca's response to the objection to claim had no value whatsoever to the Estate.

[14] The $1,046 in expenses were for the reimbursement of the filing fee. However, Mr. Koch acknowledges in the Fee Application that the Debtor has already reimbursed him that item.

Mr. Koch deserved some of the blame for the Debtor's lack of financial transparency and any appreciable movement toward reorganization.  The DeLuca Objection was also "prepared with the assistance of John P. Raynor" and therefore it will stricken and vacated from the Docket.[15]

Nevertheless, the Oversigned agrees with the Trustee.  The Debtor's MORs were filed by Mr. Koch with huge, unexplained cash gaps that cut directly against the Debtor's financial disclosure obligations.  Even if Mr. Koch somehow didn't know of this glaring problem when he agreed to represent the Debtor, he should have realized it when the first set of MORs were given to him for filing and then advised the Debtor to install workable financial controls.  If that could not be accomplished, the problem should have been raised with the U.S. Trustee for either guidance or acceptance of the inevitable consequences.  To do less than that is an implied acceptance of cash spillage that cannot be tolerated in a Chapter 11.  A business that cannot effectively track and account for its income (especially one that runs mainly on cash) is not a candidate for reorganization.  Mr. Koch's failure to grapple with this significant problem only added fuel to the creditors' ire and was the reason a trustee was appointed.  On the other hand, Mr. Koch did prepare the Debtor's other necessary filings and generally represented the Debtor until the appointment of the Trustee.  Likewise, Mr. Koch was right in recognizing and fighting

---

[15] Even if it were not vacated, the rambling DeLuca Objection does not add much of substance beyond the concise summary included in the Trustee's Second Objection.  The DeLuca Objection complains about, (a) Mr. Koch's failure to disclose his receipt of additional sums toward his retainer and (b) his alleged breach of fiduciary duties. As for the first point, Mr. Koch did disclose the total agreed upon retainer in his Disclosure of Compensation and the fact that he had not received the entire payment at that time.  There are cases that take a strict view of non-disclosure, see *In re Gay*, 390 B.R. 562, 570 (Bankr. D. Md 2008), *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991), but the Oversigned sees no pressing reason to apply them in light of Mr. Koch's initial disclosure and the ultimate result reached in this Opinion.  As for the second point, Mr. DeLuca and Mr. Raynor have set out a laundry list of Mr. Koch's "fiduciary breaches."  But virtually all of them are examples of the Debtor's mismanagement and not acts committed (or encouraged) by Mr. Koch.  Counsel does have fiduciary obligations (see *In re Rivers*, 167 B.R. 288 (Bankr. N.D. Ga. 1994); *In re Lewis Road, LLC*, Ch. 11 Case No. 09-37672-KRH, 2011 WL 6140747 (Bankr. E.D.Va. Dec. 09, 2011)) but without any evidence that he committed the acts or encouraged the Debtor to commit them, there is no basis for attributing the Debtor's mismanagement to Mr. Koch especially in light of the ultimate result reached in this Opinion.

back against Mr. DeLuca's blatant violation of the automatic stay, albeit without uncovering and using *Rosedale Plaza*.

By representing the Debtor in a reorganization proceeding, counsel does not guaranty a good outcome. *In re Garrison Liquors, Inc.*, 108 B.R. 561, 564 (Bankr. D. Md. 1989). Such a rule would render Chapter 11 debtor representation a thing of the past and eviscerate the bankruptcy system. Accordingly, and considering all the factors in this case, the Oversigned concludes that a total award, including fees and expenses, of $8,546, equaling the retainer already held plus the expenses already reimbursed, is enough under the circumstances. The Oversigned admits to an element of Kentucky Windage in this result but believes it is equitable at bottom in light of the wild swings between effective and ineffective representation on the part of Mr. Koch.

     c.    *Mr. Raynor Acted in Contempt of Court and Appropriate Sanctions will be Entered Against Him*

Mr. Raynor did not appear at the hearing on the Contempt Order asserting prior commitments and that the distance was too far to travel. The Raynor Response asserts that, in any event, the Court could not exercise personal jurisdiction over Mr. Raynor and therefore he was under no obligation to appear at the hearing on the Contempt Order. Personal jurisdiction arises when an individual's conduct and connection with the forum state are such that he or she should reasonably anticipate being haled into the forum state's courts. *Burger King Corp. v. Rudzewicz*, 471 U.S 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Jurisdiction is proper where a "substantial connection" arises from the contacts and deliberate actions of the individual. *Id*. at 475.

Attached to this Opinion as Appendix I is the Limited Representation Agreement (Agreement) between Mr. DeLuca and Mr. Raynor. It is dated April 18, 2013, the day after the

entry of the Order Denying Reconsideration.  That Order is the document which reflects the Court's belated realization of attorney involvement on Mr. DeLuca's behalf.  The Agreement was written to memorialize the ongoing, pre-existing, attorney-client relationship between Messrs. DeLuca and Raynor.  In other words, it confirms that Mr. Raynor was representing Mr. DeLuca throughout this case.  Mr. Raynor also expressly confirmed his representation of Mr. DeLuca to the Fourth Circuit Court of Appeals in his Misconduct Complaint.  To now suggest that this Court has no jurisdiction or authority over Mr. Raynor in light of the Agreement's clear import is the height of arrogant nonsense.  There is no rational basis for sustaining a lack of personal jurisdiction objection in this context and therefore it will be overruled.

A copy of the July 24, 2013 Contempt Order is attached to this Opinion as Appendix II. The Oversigned issued the Contempt Order because:

1.   Mr. Raynor's admitted representation of Mr. DeLuca appeared to violate Bankruptcy Rule 9011 due to his failure to sign filed papers that he took part in preparing;

2.   Mr. Raynor appeared to be engaged in the unauthorized practice of law; and

3.   Mr. Raynor appeared to have engaged in "Ghostwriting."

In response, Mr. Raynor asserted that, (a) Mr. DeLuca's repeated, "footnoted" disclosures of Mr. Raynor's participation on his behalf shield Mr. Raynor from any adverse consequences and (b) the legal services he rendered were done on a *pro bono* basis.

Rule 9011 provides that every paper filed in a bankruptcy case, "shall be signed by at least one attorney of record in the attorney's individual name.  A party who is not represented by an attorney shall sign all papers.  Each paper shall state the signer's address and telephone number . . . ." FED. R. BANKR. P. 9011(a). The Rule's express language underscores its primary purpose: to insure that a paper's author take responsibility for what the paper says and to hold the

author accountable for statements made within the paper's four corners. See Rule 9011(b) and

(c); *In re Mungo*, 305 B.R. 762, 768 (Bankr. D. S.C. 2003). Mr. Raynor admitted (as did Mr.

DeLuca) that he assisted in the preparation of legal papers filed in this case on Mr. DeLuca's

behalf. Accordingly, and while he was not the attorney "of record" solely because he declined to

formally seek *pro hac vice* status or otherwise expressly enter his appearance, his decision to try

and maintain an ambiguous posture, by giving advice and preparing documents but intentionally

not signing them, constitutes a violation of Rule 9011. Accordingly, the Court finds that Mr.

Raynor violated Rule 9011.

The phrase "practice of law" is given a broad construction so that it includes, "[t]he

preparation of legal documents, their interpretation, the giving of legal advice, and the

application of legal principles to problems of any complexity . . . ." *In re Final Analysis, Inc.,*

389 B.R. 449, 460 (Bankr. D. Md. 2008) (quoting *In re Lucas,* 312 B.R. 559, 575 (Bankr. D. Md.

2004)). Local Rule 9010-3 is explicit about the privilege of practicing law before this Court:

only those admitted to the Bar of the U. S. District Court for the District of Maryland (District

Court) may do so. An attorney not admitted to the District Court may, in certain circumstances,

be admitted *pro hac vice*. However, no motion for *pro hac vice* admission was ever filed on Mr.

Raynor's behalf. According to the Misconduct Complaint, Mr. Raynor is admitted to the

Nebraska bar.[16] He is not admitted to the District Court bar. Similarly, only attorneys licensed

to practice law in Maryland (or admitted *pro hac vice*) may practice law in this State. MD. CODE

ANN., BUS. OCC. & PROF. § 10-601; MD R CTS J AND ATTYS Rule 16-812; MRPC 5.5. Mr.

---

[16] Mr. Raynor included what appears to be a Nebraska law license number beneath his signature on the Response.
However, he did not include his address and telephone number in violation of the relevant rules. Fed. R. Bankr. P.
9011; Local Bankruptcy Rule 9011-1.

Raynor is not admitted to the Maryland Bar.[17]  Accordingly, the Court concludes that by

operating as he did, Mr. Raynor engaged in the unauthorized practice of law.

　　　As for the question of "ghostwriting" and whether Mr. Raynor engaged in it, as stated in

*Mungo*:

> Ghost-writing is best described as when a member of the bar
> represents a pro se litigant informally or otherwise, and prepares
> pleadings, motions, or briefs for the pro se litigant which the
> assisting lawyer does not sign, and thus escapes the professional,
> ethical, and substantive obligations imposed on members of the
> bar.

*In re Mungo*, 305 B.R. 762, 767 (Bankr. D. S.C. 2003).

　　　The practice is "inconsistent with the intent of certain procedural, ethical, and substantive

rules of the Court."  *Laremont-Lopez v. Southeastern Tidewater Opportunity Center*, 968 F.

Supp. 1075, 1077 (E.D. Va. 1997).  To do so violates an attorney's duty of candor and

circumvents Rule 9011 which ensures that submissions of court documents are made in good

faith with the responsible party's signature.[18]  Attorneys who engage in ghostwriting for *pro se*

litigants may be subject to sanctions, suspension or disbarment.  *Mungo*, 305 B.R. at 767.

　　　Mr. DeLuca did make Mr. Raynor's representation known through the footnotes.

However, operating under the belief that Mr. DeLuca was proceeding in a genuine *pro se*

fashion, the Oversigned at first did not notice the footnotes.  They should have been noticed and

the Oversigned accepts responsibility for the failure to do so.  When no action was taken by the

---

[17] The unauthorized practice of law in Maryland can constitute a crime.  *Attorney Grievance Comm'n of Maryland v. Shryock*, 408 Md. 105, 121-22, 968 A.2d 593, 603 (2009).

[18] The Second and Eleventh Circuits appear to have liberalized their approach to ghostwriting. See *In re Fengling Liu*, 664 F.3d 367, 370 (2d Cir. 2011) (attorney could ghostwrite a document as long as service was a part of a limited representation agreement and there was no affirmative representation that the document was prepared without attorney assistance); *In re Hood*, 727 F.3d 1360, 1364-65 (11th Cir. 2013) (attorneys who prepared a barebones bankruptcy petition without disclosing their involvement had not engaged in prohibited conduct as filling in a form petition did not arise to drafting or composing a document).  The Fourth Circuit has not addressed this issue in a reported case.

Court at the very beginning of the case, Mr. DeLuca and Mr. Raynor could have concluded that the Court was not concerned. This likelihood will be taken into account as a mitigating factor.

Nevertheless, Mr. Raynor is personally responsible for conducting himself in a lawful manner and an attorney who actively represents a client in a case is bound to do so in the manner required by law and procedure. It cannot be done from the Twilight Zone of shadowy, deflected responsibility where a lawyer is able to point the finger of blame at his client or otherwise duck and dodge when called to account for either advice or statements. The process of uncovering who is responsible for the specific representations included in a paper, and the advice given a client (when relevant and not privileged), cannot be reduced to a guessing game. Moreover, whether "ghostwriting" may ever be deemed permissible in this Circuit, that would not excuse an out of state, unadmitted attorney from practicing law without either a license or *pro hac vice* approval. Especially so in this case where Mr. Raynor advised Mr. DeLuca that it would be appropriate for Mr. DeLuca to try and torpedo the Debtor's reorganization by violating the automatic stay through the seizure of the liquor license. Mr. Raynor would like to be able to do this under the guise of "assistance" and accept no responsibility for his incompetent, grossly erroneous advice. To put it mildly, that sort of chaos does not enhance the administration of justice. It would allow any attorney anywhere to dive into a case, no matter the jurisdiction, with free rein and no attendant responsibility. If the Court had realized at the beginning that it was Mr. Raynor who was doling out "free advice" calculated to upend the reorganization, then he would have been heavily sanctioned perhaps in a greater amount than the sanctions levied against Messrs. DeLuca and Kline. However, because of the Court's error in not noticing the footnotes, no monetary sanctions will be levied at this time.

With all that in mind, the sanctions that will be levied against Mr. Raynor are:

    a.      Mr. Raynor shall be reprimanded for his violations of Rule 9011 and for practicing law in this Court and in this State without a license;

    b.      Mr. Raynor shall be barred from ever practicing law in this Court;

    c.      Mr. Raynor shall be ordered to submit this Opinion to the Nebraska Supreme Court Counsel for Discipline for such action as that body deems appropriate;

    d.      All papers filed on Mr. DeLuca's behalf that Mr. Raynor participated in the preparation of shall be stricken and vacated from the record.

## V.   <u>Conclusion</u>

To summarize, the Substantial Contribution Motion shall be denied, the Fee Application will be granted to the extent of $8,296 and the Contempt Order shall be sustained. A separate order memorializing these rulings shall issue.

cc:    James P. Koch, Esq.
       1101 St. Paul Street, Suite 404
       Baltimore, MD 21202

       Joseph Bellinger, Esq.
       Offit Kurman
       300 E. Lombard Street, Suite 2010
       Baltimore, MD 21202

       Gregory Michael Kline, Esq.
       Law Office of Gregory M. Kline, LLC
       550M Ritchie Highway
       PMB# 159
       Severna Park, MD 21146

John J. DeLuca, CPA
Succisa Virescit, LLC
P.O. Box 83
Odenton, MD 21113

John P. Raynor, Esq.
5062 So. 108th St., #115
Omaha, Nebraska 68137

Edmund A. Goldberg
Office of U.S. Trustee
101 W. Lombard Street
Suite 2625
Baltimore, MD 21201

**End of Opinion**

# APPENDIX I

## LIMITED REPRESENTATION AGREEMENT

Considering the implied threat against me (John Raynor) by the Bankruptcy Court Judge entered in the Bankruptcy Case of Dream Play, Inc., Case No. 12-23120 (RAG) (the "BK Case") made in the Order entered April 17, 2013, John Raynor ("Raynor"), the attorney, and John J. DeLuca ("DeLuca"), the client, have decided to document their agreement regarding limited representation provided by Raynor. This document is being executed by DeLuca to acknowledge the terms and conditions of past and future representation, to wit:

- Raynor is not licensed to practice law in the State of Maryland;
- Generally, Raynor's law practice has not involved litigation matters;
- Raynor has from time to time provided litigation support services for other attorneys in other matters;
- Raynor is not a Bankruptcy attorney but rather an attorney with bankruptcy experience;
- Raynor will not appear in any Court on behalf of DeLuca;
- DeLuca represents to Raynor that he is fully capable of representing himself before various courts;
- Raynor believes that DeLuca could more than adequately advocate his interest in Court;
- Without the assistance of Raynor, DeLuca could not afford to vindicate his rights;
- Raynor will assist Deluca with legal research and in the preparation of various legal documents with respect to the BK Case and all appeals resulting from proceedings in the BK Case;
- Raynor is providing all services on a *pro bono* basis and Raynor will not have any interest in any outcome of any proceeding.
- If Raynor advances any funds, DeLuca will be obligated to repay said funds; and
- Raynor will be entitled to recover any out of pocket cost that he may advance.

The foregoing represents the agreements by and between Raynor and DeLuca that have governed the provision of legal services to this point in the Bankruptcy Case and which govern the provision of legal services in the future.

Dated: April 18, 2013.

_____
John J. DeLuca

Exhibit 4_Limited Representation Agr._0001

# APPENDIX II

Entered: July 24, 2013
Signed: July 24, 2013
**SO ORDERED**
**The hearing shall be held on August 28, 2013 at**
**10:00  a.m.**



ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (at Baltimore)

In re:                                    *

Dreamplay, Inc.                           *        Case No. 12–23120–RAG
                                                   Chapter 11

     Debtor                              *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## ORDER THAT JOHN P. RAYNOR, ESQUIRE SHOW CAUSE AS TO
## <u>WHY HE SHOULD NOT BE HELD IN CONTEMPT</u>

**I.     Background**

     On July 16, 2012, Dreamplay, Inc. (Debtor) filed a Voluntary Petition for relief under

Chapter 11 of the Bankruptcy Code.[1]  In the preamble to creditor John DeLuca's Movant's

Motion to Dismiss the Case or Alternatively, Appoint a Trustee (Motion to Dismiss) filed on

February 11, 2013 (Dkt. No. 47) – the first paper filed by Mr. DeLuca – he claimed to be

appearing *pro se*. Prior to the filing of that paper, Mr. DeLuca hired Attorney Gregory Kline to

represent him in the District Court of Maryland for Baltimore City in a suit filed against the

Debtor, its President Wendell Woodard, and two other individuals — Barry Richardson, Sr. and

Barry Richardson, Jr. — to recover fees for accounting work.  The Richardson's were named

---

[1] Unless otherwise noted, all statutory citations are to the Bankruptcy Code (Code), found at Title 11 of the United
States Code and all rule citations are to the Federal Rules of Bankruptcy Procedure (Rules).

licensees on the Debtor's liquor license. Mr. DeLuca secured a default judgment, obtained a writ of execution and, on January 31, 2013, the liquor license (kept at the Debtor's place of business) was seized by the Sheriff at Mr. DeLuca's instigation (Dkt. No. 45; Exhibit B).[2]

The Debtor, through both Mr. Woodard and its then counsel, James P. Koch, informed Messrs. Kline and DeLuca that the seizure violated the automatic stay. When no corrective action was taken by February 8, 2013, the Debtor filed an Expedited Motion for Sanctions for Continuing Violations of the Automatic Stay (Sanctions Motion) (Dkt. No. 45). In his written response, and during the hearings on the Sanctions Motion, Mr. DeLuca stated he had consulted with an "attorney with bankruptcy experience" regarding the contemplated seizure of the license and that he had been advised that if the liquor license was not "owned" by the Debtor, then what he intended to do would not violate the automatic stay. However, in Maryland it is settled that a liquor license obtained on behalf of a corporation is corporate property – and not that of the individual licensees – and is therefore property of the estate pursuant to 11 U.S.C. Section 541(a).[3] Accordingly, this Court concluded that Messrs. Kline and DeLuca had willfully violated the automatic stay of Section 362(a) and on April 2, 2013, entered an Order Granting Debtor's Expedited Motion for Sanctions for Continuing Violations of Automatic Stay (Contempt Order) (Dkt. No. 97).[4]

---

[2] The Debtor operates a so-called Gentlemen's Club.

[3] *See Rosedale Plaza Ltd. P'ship v. Lefta, Inc.*, 780 A.2d 387, 393 (2001).

[4] Messrs. DeLuca and Kline were ordered to pay to the Estate $2,085 jointly as actual damages and $5,000 individually as punitive damages (Dkt. No. 97). At the same time, the Court decided that the appointment of a trustee would be in the best interest of the estate (Dkt. No. 99).

On April 15, 2013, Mr. DeLuca filed several motions that sought the revision of the Contempt Order and each was denied.[5]  In each, Mr. DeLuca held himself out as proceeding *pro se* in the preamble, yet his signatures were accompanied by footnotes indicating that an attorney named John P. Raynor had provided him with *pro bono* assistance toward the preparation of the particular document.[6]  However, the Court is embarrassed to admit that the substance of the footnotes was overlooked the first time the documents were reviewed. Nevertheless, the papers listed in footnote 5 seemed to be of better overall quality than those previously filed by Mr. DeLuca and hence, the Order denying his Motion for Reconsideration entered on April 17, 2013 provided in part that, "the Motion appears to have been drafted with the guidance of legal counsel, or entirely ghostwritten, although no attorney assistance is disclosed.  If the Court suspects that ghostwriting has occurred in the future, then appropriate action, including an evidentiary hearing to investigate, shall be taken." (Dkt. No. 113).

On April 29, 2013, Mr. Raynor filed a Complaint of Judicial Misconduct or Disability (Misconduct Complaint) (No. 04-13-90040, 4th Cir. 2013) with the U.S. Court of Appeals for the Fourth Circuit that accused the Oversigned of acting to deny Mr. DeLuca the benefit of limited representation and wrongfully threatening to hold an evidentiary hearing.  Misconduct Complaint at 9.  A Limited Representation Agreement (Agreement) dated April 18, 2013, that documented Mr. Raynor's arrangement with Mr. DeLuca, was attached to the Misconduct Complaint.  The Agreement included Mr. Raynor's promise to "assist DeLuca with legal research and in the preparation of various legal documents . . . ."  The Fourth Circuit Court of

---

[5]These motions were (1) John J. DeLuca's Motion for Reconsideration of the April 2, 2013 Order Granting Debtor's Expedited Motion for Sanctions for Continuing Violations of Automatic Stay (Dkt. No. 110), (2) John J. DeLuca's Motion for Expedited Consideration of the Motion for Stay of the Court's Order of April 2, 2013 Providing for Compensatory and Punitive Sanctions (Dkt. No. 111) and (3) Motion for Stay of the Court's Order of April 2, 2013 Providing for Compensatory and Punitive Sanctions (Dkt. No. 112).

[6] Each footnote read: "This document was prepared with the assistance of John P. Raynor, Esq., on a *pro bono* basis."

3

Appeals dismissed the Misconduct Complaint concluding that there was 1) a lack of factual

support for the allegation of misconduct and 2) this Court has the latitude to inquire into the

nature and propriety of Mr. Raynor's ongoing representation of Mr. DeLuca.[7]  In the Matter of a

Judicial Complaint Under 28 U.S.C. § 351, No. 04-13-90040 at 4. slip. op. (4th Cir. Jun. 3,

2013).

      Admittedly, this Court – albeit under the impression that Mr. DeLuca was proceeding *pro

se* as he represented – erred in failing to notice the multiple footnotes until after the Misconduct

Complaint was filed.  Nevertheless, had the footnote in the Motion to Dismiss been noticed upon

the first reading, an order to show cause would have been immediately entered to Mr. Raynor for

the reasons explained in this Order.

**II.**      **The Reasons Why Mr. Raynor Must Show Cause**

      *a.*      *Mr. Raynor's representation of Mr. DeLuca appears to have violated Bankruptcy
          Rule 9011.*

      Attorneys are required to disclose their representation in a case by signing all documents

filed on behalf of their client and thereby personally certifying "that there are grounds to support

the assertions. . . ."  *In re Mungo*, 305 B.R. 762, 768 (Bankr. D. S.C. 2003).  Rule 9011 holds

attorneys accountable for the veracity of the representations made in filed papers and subjects

them to sanctions if the Rule is violated. Rule 9011(c).  The overall quality of Mr. DeLuca's

papers has swung from clumsy to a professional level of expertise.  There is more than

reasonable cause to believe that Mr. Raynor took the lead in preparing these documents while

representing Mr. DeLuca and to the extent he did, or drafted any portion at all, his authorship

should have been disclosed in the manner mandated by Bankruptcy Rule 9011.  Ambiguous

---

[7] Once the Misconduct Complaint was filed, the Oversigned reviewed Mr. DeLuca's prior filings and saw that
footnotes reflecting Mr. Raynor's involvement were included in each.  Since the filing of the Misconduct Complaint,
additional papers with identical footnotes have also been filed.

disclosure in a footnote included at the end of a document alleged to be filed *pro se* is no substitute for Rule 9011's signature requirement.

> b.    *Mr. Raynor appears to be engaging in the unauthorized practice of law in this Court and in the State of Maryland.*

The phrase, "practice of law" is given a broad construction so that it includes "[t]he preparation of legal documents, their interpretation, the giving of legal advice, and the application of legal principles to problems of any complexity . . . ." *In re Final Analysis, Inc.*, 389 B.R. 449, 460 (Bankr. D. Md. 2008) (quoting *In re Lucas*, 312 B.R. 559, 575 (Bankr. D. Md. 2004)) (internal quotations and citations omitted); *See also* Md. Code Ann., Bus. Occ. & Prof. § 10-101(h). Local Rule 9010-3 is explicit about the privilege of practicing law before this Court: only those admitted to the Bar of the U. S. District Court for the District of Maryland (District Court) may do so. An attorney not admitted to the District Court may, in certain circumstances, be admitted *pro hac vice*. However, no motion for *pro hac vice* admission was ever filed on Mr. Raynor's behalf. According to his Misconduct Complaint, Mr. Raynor is admitted to the Nebraska bar. He is not admitted to the District Court bar. Similarly, only attorneys licensed to practice law in Maryland (or admitted *pro hac vice*) may practice law in this State. Md. Code Ann., Bus. Occ. & Prof. § 10-601. Mr. Raynor is not admitted to the Maryland Bar.

In the Misconduct Complaint, Mr. Raynor stated "Complainant did the legal research; however, documents submitted to the Bankruptcy Court were only submitted after Mr. DeLuca altered the presentation and the content to his liking." Misconduct Complaint at 7. It is likely that it was Mr. Raynor who mis-advised Mr. DeLuca regarding his contemplated seizure of the Debtor's Baltimore City liquor license and whether such seizure would violate the automatic stay. Finally, the Misconduct Complaint itself appears to be as much an effort by Mr. Raynor to out-flank the Court and secure the Fourth Circuit's blessing for past and future legal

representation. In sum, it appears that Mr. Raynor has been engaged in the practice of law in this

Court and in Maryland without a license and if that is the case, it is indeed a serious matter.

        *c.*      *Mr. Raynor appears to have engaged in Ghostwriting.*

> Ghostwriting is best described as when a member of the bar
> represents a *pro se* litigant informally or otherwise, and prepares
> pleadings, motions, or briefs for the *pro se* litigant which the
> assisting lawyer does not sign, and thus escapes the professional,
> ethical, and substantive obligations imposed on members of the
> bar.

*Mungo*, 305 B.R. at 767.

     The practice is "inconsistent with the intent of certain procedural, ethical, and substantive

rules of the Court." *Laremont-Lopez v. Southeastern Tidewater Opportunity Center*, 968 F.

Supp. 1075, 1079-80 (E.D. Va. 1997). Attorneys who engage in ghostwriting for *pro se* litigants

may be subject to sanctions, suspension or disbarment. *Mungo*, 305 B.R. at 767. To do so

violates an attorney's duty of candor and circumvents Rule 9011 which ensures that submissions

of court documents are made in good faith with the responsible party's signature. It seems Mr.

Raynor has drafted pleadings with the actual and constructive knowledge that Mr. DeLuca would

submit them to the Court while representing himself to be *pro se*. While this was not done

anonymously, a vague footnote appended to the signature block does not alleviate the problem.

The Court acknowledges that it should have noticed Mr. DeLuca's footnotes and dealt with the

festering problem long ago. Nevertheless, Mr. Raynor is personally responsible for conducting

himself in a lawful manner. In short, an attorney who actively represents a client in a case is

bound to do so in the manner required by law and procedure and the process of uncovering who

is responsible for the representations included in a paper cannot be reduced to a guessing game.

     Wherefore, it is, by the United States Bankruptcy Court for the District of Maryland,

hereby

ORDERED, that John P. Raynor shall file a response to show cause, if any, in writing within twenty (20) days from the entry of this Order; and it is further,

ORDERED, that John P. Raynor shall appear before this Court in Courtroom 1B of the U.S. Bankruptcy Court, U.S. Courthouse, 101 West Lombard Street, Baltimore, Maryland, on the date and time noted above, to show cause, if any, why he should not be held in contempt.


cc:     James P. Koch, Esquire
        1101 St. Paul Street, Suite 404
        Baltimore, MD 21202

        Joseph Bellinger, Esquire
        Offit Kurman
        300 E. Lombard Street, Suite 2010
        Baltimore, MD 21202

        Gregory Michael Kline, Esquire
        Law Office of Gregory M. Kline, LLC
        550M Ritchie Highway
        PMB# 159
        Severna Park, MD 21146

        John J. DeLuca, CPA
        Succisa Virescit, LLC
        P.O. Box 83
        Odenton, MD 21113

        John P. Raynor, Esquire
        5062 So. 108th St., #115
        Omaha, Nebraska 68137

        Edmund A. Goldberg
        Office of U.S. Trustee
        101 W. Lombard Street, Suite 2625
        Baltimore, MD 21201

**End of Order**